Case 4:17-cv-01653   Document 1-8   Filed in TXSD on 06/01/17   Page 1 of 11

4/28/2017 11:38:00 AM
Chris Daniel - District Clerk Harris County
Envelope No. 16724888
By: Nelson Cuero
Filed: 4/28/2017 11:38:00 AM

2017-28505 / Court: 011
NO. _____

| | | |
|---|---|---|
| **SCOTT PLACE PHARMACY, LLC** | § | **IN THE DISTRICT COURT** _____ |
| | § | **JUDICIAL DISTRICT OF HARRIS** |
| | § | **COUNTY, TEXAS** |
| **Plaintiff** | § | |
| **V.** | § | |
| | § | |
| **UNITED HEALTH CARE OF TEXAS** | § | |
| **OptumRx, LLC** | § | |
| **Defendant.** | § | |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **NOW COMES** Plaintiff Scott Place Pharmacy, LLC, and for its causes of action against Defendants United Health Care, Inc., and OptumRx, LLC states as follows:

#### I.   DISCOVERY CONTROL PLAN LEVEL

1. Discovery should be conducted under T.R.C.P. 190, Level 2.

#### II.   JURISDICTION AND VENUE

2. The subject matter in controversy is within the jurisdictional limits of this court under Tex. Bus. & Comm. Code §15.21(1), and V.T.C.A. Insurance Code Art. §21.52B. The sum or value of the amount in controversy is more than $200,000 but less than $1,000,000 and therefore is in excess of the minimum jurisdictional limits of this Court.

#### II.   PARTIES & SERVICE

3. Plaintiff Scott Place Pharmacy ("SPP"), a duly organized Texas limited liability company, was formed in August 2016 as an independent pharmacy, and is located at 8990 Kirby Dr. Suite 240, Houston, TX 77054.

4. Defendant United Health Care, ("Defendant UHC") is a Minnesota based corporation, and is a registered foreign corporation in the State of Texas. Service of process can be

Exhibit F

made at its resident agent CT Corporation System 1999 Bryan St., Ste. 900 Dallas, TX 75201 by personal delivery or certified mail.

5. Defendant OptumRx, LLC, ("Defendant ORX") is a California based limited liability company, and is a registered foreign corporation in the State of Texas. Service of process can be made at its resident agent CT Corporation System 1999 Bryan St., Ste. 900 Dallas, TX 75201 by personal delivery or certified mail.

6. Defendant UHC own and controls its subsidiary Defendant ORX in all operations, including policy making and credentialing of independent pharmacies.

7. Venue in Harris County is proper because all facts concerning this action arose mainly in Harris County, TX.

### III. NATURE OF CASE

8. Plaintiff SPP is a duly licensed Texas pharmacy, and meets all credentialing requirements of every Pharmacy Benefits Manager, including Defendants. Plaintiff SPP brings this action against Defendants UHC and ORX for their unlawful restraint of trade and abuse of their significant market power in the prescription insurance benefits and claims processing markets to automatically, arbitrarily, and in bad faith delay and/or deny credentialing of Plaintiff and other Pharmacies in violation of Texas' unfair trade practices, anti-trust, and Texas Insurance Code.

### IV. FACTS

**About Defendant UHC**

9. Defendant UHC is a healthcare insurance company that sells health and prescription insurance plans throughout the United States, and Texas. UHC also owns and operates co-Defendant ORX, a pharmacy benefits manager that processes prescription claims for Defendant UHC's prescription health plans, and other healthcare plans, including

Medicare and Medicaid.

10. Defendant UHC unfortunately has a disreputable history of fraud, dishonesty and bad faith dealings with its own customers, third parties such as physicians and pharmacies, last but not least federal and state government agencies.

11. Defendant UHC has been repeatedly found guilty and liable for serious fraud, and violation of health care waste fraud and abuse laws. The following are a but a few examples of Defendant UHC's fraudulent and bad faith dealings:

    a. Fines for Medicare/Medicaid fraud of $10,400,000 and Non-Medicare Fraud Fines of $548,424,550 million.

    b. On July 16, 2015, federal regulators fined United HealthCare Services, Inc. with "unusual fines for giving policyholders incomplete or inaccurate information about costs and benefits.

    c. In October 2013, CMS levied financial penalties for violations related to beneficiary notices in Medicare Advantage or Medicare Part D.

    d. In 2006, Defendant's CEO was fired for stock option scandal.

    e. In October 2007, Defendant UHC was sanctioned by the State of Minnesota for poor claims handling processes over a period of over 5 years, and incurred huge fines and penalties.

    f. In November 2007, Defendant UHC was fined by the Texas Department of Insurance $4.4 million dollars for failure to promptly pay claims relating to healthcare provider practices in North Houston.

    g. In January 2008, California fined Defendant UHC $3.5 million for poor claim handling. The California Insurance Commissioner cited UHC for over 130,000 handling violations and said that Defendant UHC may be subject to $1.3 billion

  in penalties.

 h. In March 2006, Arizona fined Defendant UHC $364,750 in civil penalties for violating state insurance laws.

 i. Defendant UHC is currently a defendant in massive class action lawsuits in California and Texas for defrauding thousands of patients out of millions of dollars concerning residential treatment claims.

12. Defendant UHC's fraudulent history is relevant to this case as it reveals the type of bad faith and fraud UHC utilizes in its dealings with customers and competitors.

13. Defendant UHC and Defendant ORX are virtually inseparable. Defendant UHC uses its own employees to process pharmacy credentialing applications for ORX, and then uses ORX as a middleman between pharmacies and UHC's own healthcare plans, as well as other healthcare plans such as Medicare/Medicaid.

14. Defendant UHC and ORX then use their market power to delay the credentialing of pharmacies, such as Plaintiff SPP, to undermine them financially, and prevent independent pharmacies from becoming competitors to UHC and ORX.

**15.** This fraudulent practice of delaying Plaintiff's application, enables Defendants to steer Plaintiff's patient to their own affiliate Walgreens, and their own mail order pharmacy OptumRx Pharmacy.

**Restraint on Trade and Abuse of Monopoly**

16. Upon information, Defendants UHC and ORX control nearly 50 percent of the prescription claims market in the Houston-Metro area.

17. Defendants, through their market power, unlawfully restrain trade using the following unlawful tactics:

 a. delay and frustrate the credentialing process of independent pharmacies such

        as Plaintiff,

    b. discriminate against retail pharmacies by requiring patients to pay mandatory co-pays, while waiving the same co-pays for customers who use OptumRx Pharmacy, and upon information, Walgreens (an affiliate of Defendants).

    c. use trade secrets and patient lists of pharmacies to directly contact them and refer them to Defendants' own affiliate pharmacies.

18. Defendants UHC and ORX are aware that for Plaintiff SPP to survive financially, Plaintiff must be able to submit claims for reimbursement on behalf of its customers.

19. Plaintiff repeatedly warned Defendants that their continued and baseless credentialing delays is causing Plaintiff serious financial harm.

20. Defendants are also aware that pharmacies that meet Defendants' credentialing requirements, such as Plaintiff SPP, are entitled under Article 21.52B, Section 2(a) of the Texas Insurance Code, to apply for credentialing and enter Defendants' network without delay.

21. Defendants, consistent with their proven history of fraudulent practices, chose to delay the processing of Plaintiff's credentialing application. Defendant did so in a discriminatory and unreasonable manner to eliminate market competition in favor of Walgreens (Defendant's affiliate) and Defendant's own mail-order business OptumRx Pharmacy.

22. This unlawful credentialing policy is used to destroy the precarious financial position of new independent pharmacies especially in a new pharmacy's first year of operation.

23. In so doing, Defendants unlawfully eliminate competition in the prescription market and limit the choice of pharmacies available to consumers.

24. Accordingly, Defendants have every incentive to deny, delay, and frustrate

independent pharmacies, such as Plaintiff, from entering their network.

25. Nothing under Texas law permits Defendants to delay credentialing of any pharmacy that meets Defendants' credentialing requirements.

26. Upon information, Defendants cite Houston's federal HEAT[1] zone designation as a reason for delaying credentialing. However, the HEAT acronym refers to a U.S. Dept. of Justice program to increase federal resources in certain areas with heightened healthcare fraud and abuse. The "HEAT" zone issue is no excuse to delay a pharmacy's right to be timely credentialed by Defendants.

27. Defendants' contrived use of the HEAT designated zones to delay credentialing is precisely the type of bad faith and unfair trade practices used by Defendants to restrain trade and destroy competition in the prescription drug market.

28. It is worth repeating Defendants' well-known reputation for healthcare fraud and abuse. Defendants contrived use of the HEAT designation as an excuse to delay credentialing of competing new pharmacies demonstrate Defendants' bad faith and restraint on trade.

**Defendants Bad Faith & Unfair Credentialing Process**

29. Between February and April 2017, Defendant UHC lied and misrepresented to Plaintiff that it would process its credentialing application in a timely manner.

30. On April 4, 2017, two inspectors from Defendant UHC, Michelle Luong and Kyle Velazquez ("Velazquez"), came to inspect Plaintiff SPP. Both inspectors advised Plaintiff that UHC acts on behalf of ORX in all credentialing matters.

31. Plaintiff SPP fully cooperated with the inspection, and successfully passed Defendants' inspections.

---

[1] "HEAT" stands for Health Care Fraud Prevention & Enforcement Action Team.

32. After the inspection was completed, Plaintiff SPP advised Defendants' again that UHC's credentialing delays are causing Plaintiff SPP serious financial harm.

33. But Mr. Velazquez appeared uninterested in the delays, and began to ask personal questions about Plaintiff SPP's owner and why the owner was interested in buying a pharmacy. None of these questions had any bearing or relation on the credentialing requirements of Plaintiff SPP.

34. Mr. Velazquez then began asking personal questions about the consulting pharmacist, such as where he worked, and if he works other jobs. Mr. Velazquez repeatedly referred in a condescending manner to Plaintiff SPP as a "mom and pop" pharmacy as if such designation warrants a different treatment.

35. No other pharmacy benefits manager or insurance company ever asked Plaintiff questions about its owner's personal life, and why the owner would be interested in buying a pharmacy.

**36.** Immediately after the inspection on April 4, 2017, Plaintiff SPP asked Mr. Velazquez to put in writing any concerns or questions Mr. Velazquez may have concerning Plaintiff's credentialing application, and any concerns Defendants may have with Plaintiff's staff and employees. Mr. Velazquez never responded. **To date, Defendants have not raised a single problem with the credentialing application, yet continue to delay Plaintiff's credentialing application.**

37. All Plaintiff's employees, consultants, advisors, suppliers, vendors are duly licensed, in good standing, with outstanding work ethics.

38. On or about April 20, 2017, Plaintiff contacted Mr. Velazquez again and asked about the status of the credentialing application. Mr. Velazquez answered that the application was no longer in his hands and was forwarded to his supervisor Nancy Halter in

Michigan.

39. Plaintiff SPP then contacted Ms. Halter to inquire about the status of the credentialing application. Like Velazquez, Ms. Halter gave the same excuse: application is still under study.

40. Defendants' pattern of delaying applications and insurance claims, lying to state and federal investigators, physicians, beneficiaries, and pharmacy owners, is part of a persistent fraudulent and bad faith dealings to cause competitors financial losses and to allow Defendants to take unfair advantage because of their pervasive market power in the Houston-Metro area.

41. Defendants therefore have every incentive to not credential new pharmacies such as Plaintiff SPP to undermine their financial position, and to unlawfully reduce competition.

## CONDITIONS PRECEDENT

42. All conditions precedent to filing of this case, have been performed, have occurred, or have been satisfied.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF VTCA Bus. & C. Code §15.05(a) (TFEAA)

43. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

44. Plaintiff SPP is a duly licensed independent pharmacy and fully meets the requirements of Defendants' credentialing requirements.

45. Defendants strong market position enable them to delay, frustrate, and exclude pharmacies from their network and eliminate competition.

46. Defendants used their market power to maliciously delay and unlawfully eliminate any competition from Plaintiff SPP.

47. Defendants play a significant role in reducing competition in the retail prescription market in Texas by protracting and delaying the credentialing of new retail pharmacies.

48. Accordingly, Defendants are therefore liable for violation of Tex. Bus. & C. Code §15.05(a).

## SECOND CAUSE OF ACTION
## VIOLATION of TEXAS INSURANCE CODE Article 21.52B, Section 2(a)

49. Plaintiff SPP incorporates by reference the allegations set forth above as if the same were fully set forth herein.

50. Plaintiff SPP is a duly licensed pharmacy, fully stocked, equipped and staffed. It underwent full inspections by the Texas Board of Pharmacy and other Pharmacy Benefits Managers with no issue, and meets all Defendants credentialing requirements.

51. On or about December 15, 2016, Plaintiff SPP duly and timely filed its application for credentialing with Defendants through Access Health, a service provider for pharmacies.

52. On February 14, 2017, Plaintiff filed another credentialing application directly with Defendant ORX.

53. On April 4, 2017, Defendants inspected Plaintiff SPP. Plaintiff SPP passed that inspection as well as every other inspection from the Texas State Board of Pharmacy and other insurance providers.

54. Defendants have no basis to delay the credentialing of Plaintiff SPP other than their desire to eliminate competition in the prescription drug market.

55. Defendants' credentialing polices violated Article 21.52B, Section 2(a) of the Texas

Administrative Code which prohibits Defendants from denying Plaintiff SPP "the right to participate as a contract provider under the policy or plan if Plaintiff meets all terms and requirements of Defendants' plan.

## VI. DAMAGES

56. Plaintiff has sustained damages more than this Court's jurisdictional minimum, because of the actions and/or omissions of Defendants OptumRx described hereinabove, including, but not limited to:

(a) Liquidated, Special or consequential damages for profits lost as a result of Defendant Prime Therapeutics' willful delay in credentialing of pharmacies, and violation of Plaintiff SPP's trade secrets.

(c) Punitive damages in the amount to be determined at trial.

## VII. ATTORNEY'S FEES

57. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## VIII. ALTERNATIVE ALLEGATIONS

58. Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of pleadings, allegations in this petition are made in the alternative.

## IX. PRAYER

59. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the following relief and damages:

a. Damages to be determined at trial requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, constructive trust, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

b. For preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unfair trade practices alleged above and that may yet be discovered in the prosecution of this action.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES**

        Respectfully submitted,

        DeWood, P.C.

        By: */s/ Nizar A. DeWood*
            Nizar A. DeWood, Esq.
            Texas Bar No. 24091997
            Email: nizar@dewood-law.com
            4200 Montrose Blvd, Suite 540
            Houston, X 77006
            Tel. (713) 492-2274 | Fax. (888) 398-8428
            Attorney for Plaintiff Scott Place Pharmacy